**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

EUGENE DIMATTEO,

                  Plaintiff,

             -against-

SWEENEY, GALLO, REICH & BOLZ, LLP and
DAVID A. GALLO, ESQ.,

                Defendants.

-------------------------------------------------------------x

**13-CV-08451**

**HON. PAUL A. CROTTY**

**HON. JAMES L. COTT**

---

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

---

*March 25, 2014*

Elizabeth Shollenberger, Esq.
Daniel A. Schlanger, Esq.
Schlanger & Schlanger, LLP
343 Manville Road
Pleasantville, NY 10570
T. 914.946.1981, ext. 103
F. 914.946.2930
elizabeth.shollenbeger@schlangerlegal.com

*ATTORNEYS FOR PLAINTIFF*

# TABLE OF CONTENTS

I.   INTRODUCTION .................................................................................................. 1

II.  *FACTS* ................................................................................................................. 2

III. ARGUMENT ....................................................................................................... 5

   A.   **The Complaint Sets Forth a Valid Cause of Action Under the FDCPA** ................. 5

      1.   *It Is Well Established that the Litigation Activities of Landlords' Attorneys Are Covered Under the FDCPA.* ............................................................................. 5

      2.   *False and Misleading Statements Made by Attorneys in State Court Actions Give Rise to Liability Under the FDCPA* ............................................................. 6

      3.   *Accepting Rent From Mr. Hirko Would Not Have Prejudiced Sullivan* ...................... 9

   B.   **The Complaint Sets Forth a Valid Cause of Action Under Judiciary Law § 487** .. 14

   C.   **Settlement Of The State Court Action Did Not Bar The Present Action** ............... 19

IV.  *CONCLUSION* ................................................................................................... *22*

## I.    __INTRODUCTION__

Plaintiff Eugene DiMatteo ("Mr. DiMatteo"), by and through counsel, respectfully submits this memorandum of law in opposition to the Defendants' motion to dismiss.

This case is brought under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and New York's Judiciary Law § 487.   The Defendants, the law firm of Sweeney, Gallo, Reich & Bolz, LLP ("SGRB") and one of its partners, David Gallo ("Mr. Gallo")  violated the FDCPA in the course of attempting to collect rent from Mr. DiMatteo  by (1) seeking rent that was not owed; (2) threatening to sue for a debt that could not lawfully be collected; (3) subsequently suing for that alleged debt in the Housing Part of the New York City Civil Court; and (4)  alleging that attorneys' fees were owed, when there had been no award of such fees and  there was no contractual provision permitting the collection of attorneys' fees.

The Defendants also violated N.Y. Judiciary Law, § 487, which provides in pertinent part that an attorney who is guilty of any deceit or collusion to deceive the court or any party forfeits to the injured party treble damages.

Defendants argue for dismissal based principally on grounds that state law *required* its landlord client to reject Mr. Hirko's payments (which were made on checks from a joint account of Mr. Hirko and Mr. DiMatteo and were signed by Mr. Hirko) in order for the landlord client to preserve its right to challenge Mr. Hirko's possible future succession rights in the rent controlled apartment which Mr. Hirko and Mr. DiMatteo now share.  Such succession rights would come into play only upon Mr. DiMatteo's death or departure from the apartment.  Defendants' arguments are entirely without merit.  State law did not require the landlord to reject Plaintiff's rent payments in order to preserve its rights, nor did it require Defendants to file state court pleadings that falsely gave the impression that this was a simple case of non-payment when, by

Defendants' own sworn admission, Mr. Hirko and Mr. DiMatteo had timely tendered all rents. Moreover, even were this somehow not the case, Defendants pre-litigation dunning letter, and their claim for attorney's fees when no agreement regarding attorney's fees existed between the parties were clearly unlawful.

## II. <u>FACTS</u>

Mr. DiMatteo is a rent-controlled tenant at 183 Thompson Street, Apartment C-1, New York, NY, ("the Apartment"). (Complaint ¶ 15).   Martin Hirko ("Mr. Hirko") has lived in the Apartment with Mr. DiMatteo in a family-like relationship for many years and continues to reside there together with Mr. DiMatteo now.  (Complaint ¶ 19)

Mr. DiMatteo and Mr. Hirko maintain a joint checking account. (Complaint ¶ 20) and Mr. Hirko handles the household's finances. (Complaint ¶ 21). Although there has been ongoing friction between Sullivan and Mr. DiMatteo regarding rent payments made by Mr. Hirko, Sullivan has previously accepted checks signed solely by Mr. Hirko for rent payments for the Apartment. (Complaint ¶ 22).

Starting in September of 2012, Sullivan refused to accept payments tendered by Mr. Hirko for rent for the Apartment. (Complaint ¶ 23)  Each month, Mr. Hirko tendered the rent for the Apartment to Sullivan. (Complaint ¶ 24)   Mr. Hirko sent letters along with the rent payments, making it clear that the payments tendered were intended to pay the rent for the Apartment. (Complaint ¶ 25).

On or about September 6, 2013, Defendant SGRB sent a dunning letter to Mr. DiMatteo, alleging that Mr. DiMatteo owed $5347.03 to Sullivan, and along with the letter, included a rent demand.   (Complaint ¶ 27).  The Defendants sent this dunning letter even though Sullivan had received a negotiable check for the entire amount due and owing, which fact the Defendants

admitted (see the Stipulation of Settlement, attached to Shollenberger Declaration ("Shollenberger Decl.") as <u>Exhibit 1,</u> ¶ 2 ("State Action Stipulation") (previously attached to Complaint as "Exhibit E"), which states in relevant part that "Petitioner [Sullivan] acknowledges that respondents have tendered rent on a monthly basis and that Petitioner had refused to cash the checks, because the checks were signed by Martin J. Hirko.")

Subsequent to sending this dunning letter, Defendant SGRB, in a verified pleading signed by Defendant Mr. Gallo, initiated a summary nonpayment proceeding against Mr. DiMatteo and Mr. Hirko titled <u>Tom Sullivan LLC v. Eugene DiMatteo and Martin J. Hirko et al.,</u> in the Housing Part of New York Civil Court, (the State Court Action) seeking to evict Mr. DiMatteo for non-payment of rent.  See Notice of Petition and Petition, attached to Shollenberger Decl. as <u>Exhibit 2</u> (previously attached to Complaint as "Exhibit D"). Importantly, nothing in that Complaint gave any indication that Mr. DiMatteo had "tendered rent on a monthly basis" (State Action Stipulation at ¶ 2 )  Rather,  the allegations contained in the verified pleading indicated that this was a standard case of non-payment, such as is typically and appropriately addressed in a summary nonpayment proceeding.  The Defendants in this Federal Court action, SGRB and Mr. Gallo, were not parties to the State Court Action seeking to evict Mr. DiMatteo.

The Defendants' verified pleading contained various false statements:

(1) Defendants alleged that Mr. DiMatteo had entered into possession under a written agreement between himself and the landlord, wherein Respondent promised to pay to the Landlord as rent $296.71 in advance on the 1st day of each month. (Complaint, ¶30)  This statement was false, in that no such written agreement existed.

(2) Defendants alleged that $5,763.98 was due to Sullivan. (Complaint, ¶ 31-32) This statement was false, in that Sullivan had already received the full rent;

(3) Defendants alleged that $750 in legal fees were due. (Complaint, ¶31-32) This

statement was false, because there was no entitlement to such fees under any contract

between the parties or pursuant to any statute.

In addition, the very commencement of the State Court Action by the Defendants was

deceptive and unfair.  By bringing a summary eviction proceeding seeking eviction based on

alleged non-payment, when the underlying rent had actually been tendered by Mr. Hirko and Mr.

DiMatteo, the Defendants hoped to regain the apartment on false pretenses or at least to use such

a threat to bludgeon and coerce Mr. DiMatteo and Mr. Hirko (collectively, "the Respondents")

into an unconscionable settlement.

 Sullivan and the Respondents resolved the State Court Action on November 5, 2013 by

Stipulation, pursuant to which the State Action was discontinued without prejudice, the Landlord

acknowledged that Mr. Hirko and Mr. DiMatteo "have tendered rent on a monthly basis" but that

these funds had not been cashed; that the uncashed checks, totaling $6,180.93 "represent[ed] all

rent due" for the apartment; and that all parties were preserving all rights with regard to the

dispute regarding Mr. Hirko's succession rights to the apartment and his "occupancy/tenancy" of

the apartment.  The Stipulation did not contain any release of claims of any kind. State Action

Stipulation (Exhibit 1).

Mr. DiMatteo subsequently commenced the instant action against SGRB and Mr. Gallo.

4

III.   **ARGUMENT**

   A.  **The Complaint Sets Forth a Valid Cause of Action Under the FDCPA**

      *1.  It Is Well Established that the Litigation Activities of Landlords' Attorneys Are Covered Under the FDCPA.*
Defendants contends that the Attorney Defendants herein are not liable under the FDCPA because the litigation conduct of landlords' attorneys is somehow exempt from the FDCPA. Def. MOL at 13-14.  Defendants are incorrect.

      Lawyers collecting or attempting to collect rent pursuant to New York's RPAPL § 711 have been found to be debt collectors under the FDCPA.  Romea v. Heiberger & Assoc., 988 F. Supp. 712, 713 (S.D.N.Y. 1997), aff'd 163 F.3d 111 (2d Cir. 1998) (allegation that law firm regularly collected debts owed to landlords was a sufficient allegation of firm's status as "debt collector" to withstand motion to dismiss); Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti, 39 F. Supp. 2d 394, 396 (S.D.N.Y. 1999) (allegation that three-day notices and corresponding envelopes bore law firm's name and address was sufficient allegation of law firm's status as a "debt  collector" to withstand motion to dismiss).

      Plaintiff, as a person forced to defend against an eviction action for allegedly unpaid rent, is a "consumer" under the FDCPA.  Back rent constitutes debt under the FDCPA. Romea v. Heiberger & Assocs., 988 F. Supp. 712 (S.D.N.Y. 1997); Hairston v. Whitehorn & Delman, 1998 U.S. Dist. LEXIS 819 (S.D.N.Y. Jan. 29, 1998).

      The very same allegations made in this complaint were found sufficient to defeat a motion to dismiss in Travieso v. Gutman, supra, 1995 U.S. Dist. LEXIS 17804 (E.D.N.Y. Nov. 16, 1995) ("Plaintiffs allege that defendants, as a practice, make rent demands and other charges in excess of that permitted by . . . law, charge tenants unauthorized fees, and commence unlawful eviction proceedings in the New York City Housing Court to collect rent not actually due. . . . As

5

a result of defendants' practices, plaintiffs allege that they are forced to appear . . . in New York

City Housing Court to defend baseless claims").

      2.  *False and Misleading Statements Made by Attorneys in State Court Actions Give Rise to Liability Under the FDCPA*

More generally, the Supreme Court, the Second Circuit, District Courts in this jurisdiction

and District Courts around the country have held that the FDCPA applies to the litigation

activities of collection attorneys.

The Supreme Court's decision in <u>Heintz v. Jenkins</u> explicitly held that the term "debt

collector" as defined under the FDCPA "applies to a lawyer who 'regularly,' *through litigation*,

tries to collect consumer debts." <u>Heintz v. Jenkins,</u> 514 U.S. 291, 292 (1995). The Second

Circuit recognized <u>Heintz'</u> scope in <u>Goldman v. Cohen,</u> 445 F.3d 152, 155-157 (2d Cir. N.Y.

2006) (citing <u>Heintz</u> as additional support in holding that "communications" under the FDCPA

include state court pleadings). [1] <u>See Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti,</u> 374 F.3d 56, 60 (2d Cir. N.Y. 2004) ("The Supreme Court has made it clear that the

FDCPA applies to attorneys 'regularly' engaging in debt collection activity including such

activity in the nature of litigation.").[2]

---

[1] Although <u>Goldman</u> is no longer the law with regard to the requirements specific to <u>initial</u> communications under 1692g, due to Congress's amendment of the FDCPA, <u>Goldman</u> remains the law of the Second Circuit, for the more general proposition that the state court pleadings are "communications" which can, if false or deceptive, subject a collection attorney to liability under the Act. <u>Diaz v. Portfolio Recovery Assocs., LLC,</u> 2012 U.S. Dist. LEXIS 72724, 12-16 (E.D.N.Y. May 23, 2012).

[2] In addition to the cases cited above, numerous districts courts in this Circuit, have applied the FDCPA to conduct occurring in the course of state court collection litigation. <u>Sykes v. Mel S. Harris,</u> 757 F. Supp. 2d. 413, 428-429 (S.D.N.Y. 2010); <u>Bowens v. LR Credit 10, LLC,</u> " 2011 U.S. Dist. LEXIS 143737, *14 (W.D.N.Y. Dec. 5, 2011); <u>Miller v. Upton, Cohen & Slamowitz,</u> 687 F. Supp. 2d 86, 91 (E.D.N.Y. 2009). Numerous cases from outside this jurisdiction have likewise found that state court litigation activity is subject to the FDCPA. See, e.g. <u>Gearing v. Check Brokerage Corp.,</u> 233 F.3d 469, 471 (7th Cir. Ill. 2000); <u>Wallace v. Washington Mut. Bank, F.A.,</u> 683 F.3d 323, 326-28 (6th Cir. June 26, 2012); <u>Grdn v. Leiken, Ingber & Winters,</u>

As analyzed above, and as held in <u>Heintz, Goldman,</u> and set forth in text of the FDCPA (e.g. 1962i), the FDCPA was precisely intended to cover court pleadings specifically, and litigation conduct by debt collection law firms more generally.  It should be noted in this regard that where a state believes its own laws to provide adequate protection it can seek an exemption from the FDCPA pursuant to § 1692o, but is required to demonstrate that that state law provides the same or a superior level of protection to consumers at no greater cost to them both in law and in practice.  See 16 C.F.R. § 901.4.

Even where there is a pending state court lawsuit between the same parties, federal Courts are required to exercise concurrent jurisdiction, absent rare and extraordinary circumstances.  <u>Cadle Co. v. Cohen,</u> 1999 U.S. App. LEXIS 5210, 2-6 (2d Cir. N.Y. Mar. 22, 1999), citing *Colorado River Doctrine*, as refined in <u>Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,</u> 103 S. Ct. 927 (1983).  Courts routinely refuse to abstain from deciding concurrently brought FDCPA claims.  <u>Agan v. Katzman & Korr, P.A.,</u> 2004 U.S. Dist. LEXIS 4158, 5-6 (S.D. Fla. Mar. 16, 2004); <u>Mitchell v. General Finance Corp.,</u> 79 F.R.D. 82, 84 (N.D. Ga. 1978).

In this case, there is no currently pending state court lawsuit involving these parties.  In this scenario, talk of either abstention or waiver is nonsensical. <u>Chan v. N. Am. Collectors, Inc.,</u> 2006 U.S. Dist. LEXIS 13353, 20-22 (N.D. Cal. Mar. 24, 2006).  All the more so because there are no compulsory counterclaims (much less compulsory third party claims) under New York law. Siegel, NY Prac § 452, at 598-599.

---

P.C., 643 F.3d 169 (6th Cir. 2011); <u>McCollough v. Johnson, Rodenburg & Lauinger, LLC,</u> 637 F.3d 939 (9th Cir. 2011);  <u>Midland Funding LLC v. Brent,</u>  644 F.Supp. 2d 961, (N.D. Ohio 2009).

The cases cited by Defendants on this point are inapposite. In Kropelnicki v. Siegel, 290 F. 3d 118 (2d Cir. 2002), the Court there found an FDCPA claim barred by the Rooker-Feldman doctrine because "adjudication of a claim in federal court would require the court to determine that a state court judgment was erroneously entered or was void, the claim is inextricably intertwined with the merits of the state court judgment." Here, no judgment exists, much less is undermined by Plaintiff's FDCPA claims.

Bank v. Cooper, 2009 U.S. Dist. LEXIS 47544, 8-9 (E.D.N.Y. May 27, 2009) cited by Defendants, is also easily distinguishable and, in any event, is based on a legal standard that has been retired.  In Bank, the plaintiff was a tenant that had lost in housing court and had, in turn, filed an FDCPA action based principally on a ten dollar discrepancy in a five-day demand notice. The Court ruled that the FDCPA claim regarding the ten dollar discrepancy was "*de minimus*" and a result of "bonafide error".[3]  The Court also held that the FDCPA were "inextricably intertwined" with the merits of the state court case (which the the tenant had lost) and thus not the proper subject of an FDCPA suit, relying upon Kropelnicki's statement that Rooker-Feldman doctrine bar review of a claim of "violation of the FDCPA on the basis of the defendant's alleged misrepresentation" because it was "inextricably intertwined with the state court default judgment and the motion to vacate it.")  Bank at 8-9 (quoting Kropelnicki)

Unlike the ten dollar discrepancy at the heart of Bank, there can be no claim that the violations in question in the case at bar were "de minimus".  Nor has Defendant contended that they were the result of bona fide error pursuant to §1692k(c).

---

[3] See §1692k(c): "A debt collector may not be held liable in any action brought under this title [15 USCS §§ 1692 et seq.] if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."

Moreover, the "inextricably intertwined" standard set forth in Kropelnicki and relied upon in Bank has been explicitly repudiated by the Supreme Court, which has emphasized that *Rooker-Feldman* doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon- Mobil Corp. v. Saudio Basic Indus. Corp., 544 US 280, 284 (2005). See Mascoll v. Strumpf, 2006 U.S. Dist. LEXIS 69061, 8-9 (E.D.N.Y. Sept. 25, 2006)(in which the Court denied a motion to dismiss FDCPA claims against a collection attorney and, in doing so, noted that that Kropelnicki's "inextricably intertwined" standard, "was abrogated by the Supreme Court's decision in Exxon Mobil Corp[.]").[4]

   *3.  Accepting Rent From Mr. Hirko Would Not Have Prejudiced Sullivan*

At the heart of this dispute is whether attorneys may commence a summary non-payment proceeding seeking to evict people from their homes, when the landlord has already received all the allegedly outstanding rent.  Here, Defendants argue that had Sullivan accepted rent from Mr. Hirko, Sullivan would have been waiving its right to object to Mr. Hirko's potential future assertion of succession rights in this rent-controlled apartment.  New York law does not support such an argument, and even if it did, it would not justify an attorney's making false and deceptive statements in sworn pleadings and in attempting to collect an alleged debt.

---

[4] See also, McKitchen v. Brown, 481 F.3d 89 (2d Cir 2007)(holding that *Rooker Feldman* Doctrine "turns not on the similarity between the party's state-court and federal court claims…, but rather on the causal relationship between the state-court judgment and the injury of which the party complains in federal court." Id. at 97-98; Hoblock v. Albany County Bd. Of Elections, 422 F.3d 77, 87-88 (2d Cir. 2005).

Defendants argue that "this case is about succession rights . . . and whether the plaintiff's 'under-tenant' has a right of renewal of lease in the event the plaintiff vacates the Apartment." (Defendant's Brief at p. 9.)    This is a ridiculous argument, for several reasons.

First, the named tenant, Mr. DiMatteo, remains inarguably in occupancy of the Apartment, making "succession" rights an issue only for future adjudication.  Mr. DiMatteo is entitled to have an additional occupant share his rent-controlled apartment under New York's Roommate Law, Real Property Law § 235-f.[5]

An owner's accepting rent from an occupant who resides with the named tenant has no effect on a subsequent controversy over succession.  117 W. Fourth LLC v. Fennell, 1999 N.Y. Misc. LEXIS 709 ( App. Term 1st Dept , Feb. 24, 1999)( "While it is undisputed that landlord accepted rent directly from respondent for several years, all objective factors indicate that landlord treated her as nothing more than a lawful occupant. . . .  On these facts, it cannot be said that landlord recognized Ratz as a tenant in her own right or waived its right to contest her occupancy after the vacatur of the record tenant"); Riverside Holdings LlC v. Murray, 2002 N.Y. Slip Op. 50176(U), 2002 N.Y. Misc. LEXIS 492, (App Term, 1st Dept)(three years of rent receipts showing that occupant had paid rent in his own name did not create a waiver of  the landlord's right the right to contest sublessee's occupancy after vacatur of the statutory tenant).

---

[5] Real Property Law § 235-f states in relevant part that "It shall be unlawful for a landlord to restrict occupancy of residential premises, by express lease terms or otherwise, to a tenant or tenants or to such tenants and immediate family. Any such restriction in a lease or rental agreement entered into or renewed before or after the effective date of this section shall be unenforceable as against public policy.  Any lease or rental agreement for residential premises entered into by one tenant shall be construed to permit occupancy by the tenant, immediate family of the tenant, one additional occupant, and dependent children of the occupant provided that the tenant or the tenant's spouse occupies the premises as his primary residence."

For example, in <u>Finkelstein v. Mutual Redevelopement Houses, Inc.,</u> 186 A.D.2d 90 (1st Dep't 1992), a granddaughter sought to remain in her deceased grandfather's Mitchell Lama cooperative apartment, despite provisions in the cooperative's bylaws forbidding such succession.  The granddaughter argued that the cooperative's previous acceptance of her rent worked as a waiver of the cooperative's right to reject her tenancy.  The Appellate Division ruled against the would-be tenant, stating "None of these restrictions were waived by respondent's acceptance of rent checks from the granddaughter during decedent's lifetime, since decedent, as tenant, was entitled to have an occupant on the premises").

The cases cited by Defendants are either seriously dated, utterly irrelevant to the issue, or both. <u>Park Holding Co. v. Power,</u> 161 A.D.2d 143 (1st Dep't 1990) was decided prior to the adoption of New York's current roommate law, and has not been the law in the First Department since at least 1992.  See e.g. <u>Finkelstein,</u> 186 A.D.2d 90 (1st Dep't 1992).

<u>Park</u> is, in any event, distinguishable:  The Appellate Division overruled the Appellate Term's grant of summary judgment to the landlord, noted that the landlord had accepted rent from Powers for years, but remanded the case for the lower court to determine whether Power "co-occupied the subject apartment with [the tenant] in a 'loving -- immediate family type relationship' since at least 1974."   The clear import of <u>Park Holding</u> was that if  the lower court failed to find that Powers had co-occupied the apartment with the tenant of records in a family-like relationship, Power would not be entitled to succession, whether the landlord had accepted checks from Power or not.

Neither <u>ACP 140 W. End Ave. Assoc. v. Kelleher,</u> 9 Misc. 3d 139(A) (App. Term 1st Dept.  2005) nor <u>Limani Realty, LLC v Zayfert,</u> 40 Misc. 3d 32 (App. Term, 2nd Dept,  2012) cited by the Defendants, makes any mention of acceptance of rent as a factor in deciding

succession. Similarly, in <u>Green Ave. Assoc. v. Cardwell,</u> 131 Misc.2d 775 (Civ. Ct., Kings Co,

2002), cited by Defendants, there was no issue of acceptance of rent as a waiver of the landlord's

rights; instead, the court held that a tenant's failure to list her granddaughter, a minor child with

no income, as an occupant on her Section 8 recertification, was not fraudulent and could not

serve as the basis for the family's eviction.

Moreover, there is abundant case law which has found that coverage under a rent

regulatory scheme is governed by statute and cannot be created by waiver or estoppel. <u>Gregory</u>

<u>v. Colonial DPC Corp. III,</u> 234 A.D.2d 419 (2d Dep't 1996)(citing cases); <u>Williams v. Gallagher,</u>

NYLJ , Mar. 6, 1991,  at .23, col.3 (App. Term, 1st Dept.);  <u>New York Univ. v Benison,</u> NYLJ,

Oct. 27, 1988, at 23, col 2 (App Term, 1st Dept.)

Defendants also rely on <u>Jefpaul Garage Corp. v. Presbyterian Hosp.</u>  61 N.Y.2d 442 (

1984) to argue that Sullivan was *required* to reject Mr. Hirko's rent payments. Not so.   <u>Jefpaul,</u>

a commercial holdover proceeding decided prior to adoption of New York's roommate law, and

merely held that "waiver is the *voluntary* abandonment or relinquishment of a known right. It is

essentially a matter of intent which must be proved."  (emphasis added).

In sum, if and when Mr. DiMatteo vacates the Apartment, Mr. Hirko's right to succession

will be determined under 9 NYCRR § 2204.6, not by the landlord's acceptance of rent from Mr.

Hirko prior to Mr. DiMatteo's departure. [6]

Even if Plaintiff were incorrect – and mere acceptance of rent by Sullivan from Mr.

Hirko, were enough to secure Mr. Hirko succession rights--Defendants actions would not have

---

[6] Under these regulations, Mr. Hirko would be required to show (1) that he maintained the
Apartment as his primary residence and resided there with Mr. DiMatteo in the Apartment
continuously for at least two years prior to Mr. DiMatteo's vacating the premises and (2) that he
lived there not simply as a roommate but as a person living there in a family-like relationship
with the tenant, showing "emotional and financial commitment and interdependence."

been justified inasmuch as Sullivan had, prior to September 2012, accepted rent checks from Mr. Hirko. Complaint at ¶ 22.[7]  If such acceptance constitutes waiver, it had already occurred.

Finally, had Sullivan, in an abundance of caution,  wanted to assure itself of its position, Sullivan could have sought a declaratory judgment in Supreme Court, on the issue of whether acceptance of  rent from a co-occupant would be deemed a waiver of Sullivan's right to later contest succession rights. Such a proceeding would have clarified the issue for Sullivan (if, indeed, clarification was necessary, in light of the appellate cases cited above) without making an unwarranted and unlawful threat of eviction to Mr. Hirko and Mr.DiMatteo. much less attempting to have them evicted.

Instead, the Defendants herein, in representing Sullivan, commenced a summary non-payment proceeding under Article 7 of New York's Real Property Actions and Proceedings Law ("RPAPL") and Article 4 of New York's CPLR, alleging simple non-payment.   Summary proceedings were created by the legislature as an extremely rapid means of allowing property owners to recover their property when tenants cease paying rent.  Tenants have meager procedural protections in a summary proceeding, in contrast to a plenary action:

- In a plenary action under the CPLR, a defendant/debtor is given 20 or 30 days to answer, depending upon the method of service utilized; in a summary non-payment proceeding under the RPAPL and under local rules in New York City,  the respondent/tenant has just

---

[7] Defendants have disputed this allegation; however, for purposes of a motion to dismiss, the court must treat is as true. Lovera v. City of New York, 2014 U.S. Dist. LEXIS 20965 (S.D.N.Y. Feb. 14, 2014)("The Court accepts as true all well-pleaded factual allegations and draws all inferences in Plaintiff's favor").  Defendants' attempt to rebut this and other allegations with factual submissions made in declarations and attached as exhibits in opposition is improper; extrinsic evidence may not be considered at this stage of the proceeding subject to very limited exceptions not applicable here. See Deluca v. AccessIT Group, Inc., 695 F. Supp. 2d 54, 59-60 2010).

13

5 days to answer, and he fails to do so, the petitioner landlord may obtain  a default judgment of possession and a warrant of eviction;  in another six days, a City Marshal can then execute on that warrant and perform an eviction.

- In a plenary action, a defendant/debtor has the full panoply of discovery devices at his disposal in developing his defense; in a summary non-payment proceeding, discovery is forbidden, except by leave of court, which is rarely granted;

- In a plenary action, trial occurs months or years after issue is joined; in a summary non-payment proceeding, trials are to be scheduled within 30 days.

A summary proceeding is meant to give a property owner swift relief where the owner is continuing to provide lodging but the tenant is no longer tendering rent. New York v. Betancourt, 79 Misc. 2d 907 (App. Term, 1st Dept  1974); Poulakas v. Ortiz, 25 Misc. 3d 717, 724-725 (Civ. Ct., N.Y. Co. 2009);  Great Park Corp. v Goldberger, 41 Misc 2d 988, 989 (Civ Ct, NY Co. 1964) ("The primary purpose and intention of summary proceedings is the speedy and expeditious disposition of the issue as to the  right of the landlord to the immediate possession of his real property.")

Using a summary nonpayment proceeding when no rent is due is an unacceptable method of skirting the procedural protections normally available to a litigant.  Not only was Mr. DiMatteo denied the usual process due a litigant—he was threatened with summary eviction— the loss of his home of more than four decades.  Had Mr. DiMatteo and Mr. Hirko embarked on a three week vacation, they could have returned to find themselves homeless, with new tenants occupying their apartment.

## B.  The Complaint Sets Forth a Valid Cause of Action Under Judiciary Law § 487

With respect to the pendent New York State Judiciary Law claim, the complaint alleges that the Defendants engaged in deceit in the State Court Action, both by their false statements made in their dunning letter, which was appended to the State Court pleadings, in the State Court

14

pleadings themselves, and by the very initiation of a summary non-payment proceeding when all outstanding rent had been paid.   Complaint at ¶¶ 42-51.

Defendants contend that Plaintiff has no Judiciary Law claim because the underlying State Court action is no longer pending.   Def. MOL at 17-18.   Defendants, again, are incorrect.

New York's Court of Appeals recently clarified the scope of Judiciary Law § 487 in Amalfitano v. Rosenberg, 12 N.Y.2d 8 (2009) in which the Court answered two certified questions referred to it by the Second Circuit in Amalfitano v. Rosenberg, 533 F.3d 117 (2007). In addressing the certified questions, the Court of Appeals explained the purpose and breadth of N.Y. Jud. Law § 487, as follows:

> [S]ection 487 is not a codification of a common-law cause of action for fraud. Rather, section 487 is a unique statute of ancient origin in the criminal law of England. The operative language at issue--"guilty of any deceit"--focuses on the attorney's intent to deceive, not the deceit's success. And as the District Court pointed out, section 487 was for  many years placed in the state's penal law, which "supports the argument that the more appropriate context for analysis is not the law applicable to comparable civil torts but rather criminal law, where an attempt to commit an underlying offense is punishable as well [as] the underlying offense itself" (Amalfitano, 428 F Supp 2d at 210). Further, to limit forfeiture under section 487 to successful deceits would run counter to **the statute's evident intent to enforce an attorney's special obligation to protect the integrity of the courts and foster their truth-seeking function.**

Amalfitano v. Rosenberg, 12 N.Y.3d 8, 14 (N.Y. 2009) (emphasis added).     The Second Circuit, in revisiting Amalfitano v. Rosenberg after the New York Court of Appeals had spoken, affirmed the trial court's award of $89,415.18, which represented treble damages, where the damages were the total costs of defending an action based upon the attorney's material misrepresentations. 572 F.3d 91 (2d. Cir. 2009).

Under this standard, Plaintiff has successfully pleaded a cause of action under Judiciary Law § 487 against the Defendants.    The Complaint alleges that Defendants were guilty of deceit

15

in the State Court action and sets forth the material misrepresentations made in both the pre-litigation correspondence (which were subsequently appended to the state court pleadings and incorporated therein) and in the State Court pleadings by which the Defendants fraudulently sought to evict Mr. DiMatteo.  Plaintiff then alleged damages, the measure of which would be, *inter alia*, his attorneys' fees in defending the wrongfully brought State Court action.

That Sullivan stipulated to discontinue the State Court action when confronted by counsel, is irrelevant; had the false statements not been made, Mr. DiMatteo would not have undergone the trauma involved with receiving service of papers calling for his eviction, nor would he have been required to retain an attorney at his own expense to defend him from eviction.

Particularly in cases decided post-Amalfitano, Courts have permitted a Judiciary Law § 487 claim to proceed even where the lawyer's misrepresentation was much less egregious than it was in this matter.  See, e.g. Koch v Sheresky, Aronson & Mayefsky LLP, 2009 N.Y. Misc. LEXIS 6033 (N.Y. Sup. Ct. July 7, 2009):

> the Complaint alleges, among other things, that [defendant attorney] Salvi . . . knew that a child was involved in the marriage (i.e. Michal), and that Robert even offered to pay for child support when confronted with the issue. However, when Vladka was unrepresented by counsel at the December 2005 inquest, and she was unable to attend due to her inability to obtain a visa, Salvi allowed Robert to falsely testify that there was no child involved in the marriage, and proposed a judgment based on fraudulent testimony.
> 
> \*     \*     \*
> 
> Significantly, in a recent decision by the Court of Appeals issued on February 12, 2009, it was noted that Judiciary Law § 487 is "not a codification of common-law cause of action for fraud," and "the statute's evident intent [is] to enforce an attorney's  special obligation to protect the integrity of the courts and foster their truth-seeking function." Amalfitano v Rosenberg, 12 NY3d 8, 14, 903 N.E.2d 265, 874 N.Y.S.2d 868 (2009). "Hence, the Salvi Defendants' motion to dismiss the seventeenth cause of action (violation of Judiciary Law § 487) is denied.

16

Id at * 5. See also, Dupree v Voorhees, 24 Misc. 3d 396(Sup Ct, Suffolk County 2009)(the court

had originally dismissed the Judiciary Law 487 complaint, but on motion to reargue, after

Amalfitano, the court reversed itself, saying "the revival of this cause of action under the

Amalfitano decision emphasizes the need for all attorneys to be completely forthright in their

dealings with the court, and with one another"); Scarborough v. Napoli, Kaiser & Bern, LLP, 63

A.D.3d 1531, 1532 (N.Y. App. Div. 4th Dep't 2009)(where law firm persuaded its client to sign a

discontinuance, even though the action had already been discontinued by the court, a Judiciary

Law 487 claim lies: "Contrary to the further contention of defendants, the court properly

determined that none of the defendants is entitled to summary judgment dismissing the Judiciary

Law § 487 cause of action. . . .  Here, the documents submitted by defendants in support of their

motion establish that some of the attorneys at defendant law firm engaged in intentional deceit,

and thus by their own submissions defendants defeated their entitlement to summary judgment

dismissing that cause of action.")

Defendant's argument that this claim should be dismissed because it was not made "in

the course of a pending judicial proceeding" is simply ridiculous.   The standard is not whether

the State Court Action is pending *now* but whether it was a pending action when the false

statements and deceitful behavior occurred.    The precedents relied on by the Defendants all

relate to deceits committed either outside of litigation entirely, before a court action was

commenced,  or after a judgment had been rendered in the state court proceeding, relating only to

post-judgment collection activity outside the courts.  O'Brien v. Alexander, 898 F. Supp. 162,

168-169 (S.D.N.Y. 1995)("Since no lawsuit was pending when the alleged representations in

question were made (indeed, the alleged representations were purportedly made a year and a half

before the commencement of litigation), plaintiff's claim must be dismissed, for section 487 by

17

its terms applies only to statements made to the court or any party to a lawsuit"); Musah v.

Houslanger & Assocs., PLLC, 2013 U.S. Dist. LEXIS 121152 (S.D.N.Y. Aug. 17,

2013)("Plaintiff has . . . alleged deceitful statements made in 'post-judgment collection

documents,' . . . by definition, such statements did not 'occur during the course of a pending

judicial proceeding.'"); Nicholson v. Forster & Garbus LLP, 2012 U.S. Dist. LEXIS 10818, 5-6

(E.D.N.Y. Jan. 30, 2012) ("in this case, the allegedly false statements were not directed to a

court, nor did they occur "during the course of a pending judicial proceeding." According to

plaintiff, defendants' actions took place after a court proceeding had already concluded.");

Trautenberg v. Paul, Weiss, Rifkind, Wharton & Garrison, LLP, 629 F. Supp. 2d 259 (S.D.N.Y.

2007)("For § 487 to apply, however, the deceit must be of a party to a lawsuit in the course of a

pending judicial proceeding. . . Clearly, negotiations between an employer and an employee over

the terms of a separation agreement is not a judicial proceeding, and this claim can be

dismissed.");

In this case, Defendants' false statements were made in pleadings submitted to the Court

in the underlying State Court action, and were at the heart of the State Court action.

Plaintiff has successfully pled a cause of action under the Judiciary Law.  The situation

faced by Mr. DiMatteo was egregious.  While the Defendants' client was in possession of 100%

of all outstanding rent, the Defendants initiated an eviction proceeding, falsely claiming that rent

was due.  In the course of that overarching fraud upon the courts, the Defendant made various

other false statements to the Court, as outlined above.

Defendants motion should be denied with regard to the Judiciary Law § 487 claim, as

well.

18

### C.  Settlement Of The State Court Action Did Not Bar The Present Action

Defendants further contend that Plaintiff's Stipulation of Settlement of the State Court Action is preclusive as to this Federal Court action.   Def. MOL at 13.   Defendants' contentions lacks merit.

Specifically, under the doctrine of res judicata, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." St. Pierre v. Dyer, 208 F.3d 394, 2000 WL 305936, at *4 (2d Cir. 2000). To prevail on such a claim, Defendants are required to demonstrate that (1) the prior State Court Action was a final adjudication on the merits, (2) the prior action involved the same parties or their privies, and (3) the claims asserted in the present action were raised, or should have been raised, in the prior action. See Monahan v. New York City Dep't of Corrections, 214 F.3d 275, 285 (2d Cir. 2000). Only compulsory, and not permissive, counterclaims are subject to res judicata. Critical-Vac Filtration Corp. v. Minuteman Int'l, Inc., 233 F.3d 697, 702 (2d Cir. 2000) ("'The fact that [a claim] might have been asserted as a counterclaim in [a] prior suit . . . does not mean  that the failure to do so renders the prior judgment res judicata as respects it.'" (citation omitted);  Cameron v. LR Credit 22, LLC, 2014 U.S. Dist. LEXIS 22975, 5-7 (S.D.N.Y. Feb. 24, 2014)("'New York, unlike the federal system, does not have a compulsory counterclaim rule, and, therefore, res judicata does not bar claims that could have been raised by the defendant as counterclaims in a previous action but were not actually raised.' [citations omitted] In other words, a plaintiff is not barred from asserting his claims simply because he could have, had he so chosen, asserted them by way of defense or counterclaim in the action already concluded.' [citations omitted]")

19

The State Court Action was commenced by Sullivan, against Mr. DiMatteo.  Neither of the instant Federal Court Defendants were parties to that action, nor are they in privity with any party to that action.  Mr. DiMatteo did not raise the FDCPA in any pleading in the State Court action, nor did he waive any right to sue the instant Defendants in settling the State Court action.

Moreover, to the extent Defendants preclusion argument is based on the contention that Mr. DiMatteo had an *opportunity* to raise his FDCPA claims in the housing court proceeding and is therefore precluded from doing so now in federal court, it fails on multiple levels.

First, Sullivan, as the property owner itself, was not a "debt collector."  See 15 U.S.C. § 1692a(6) (excluding from the definition of "debt collector" creditors collecting their own debts). Because Sullivan is not a debt collector, no FDCPA claims could be brought against it, in the State Court action or in this proceeding.

Second, it is unlikely that Mr. Mr. DiMatteo could have implead the instant defendants, because joinder in summary proceedings is severely limited. As was explained in United States v. Katz, 2011 U.S. Dist. LEXIS 59159, 23-25 (S.D.N.Y. June 2, 2011):

> The Housing Court is a court of limited jurisdiction, "devoted to actions and proceedings involving the enforcement of state and local laws for the establishment and maintenance of housing standards." NYCCCA § 110(a). The Housing Court is also vested with authority to consider "any counterclaim for money only, without regard to amount." NYCCCA § 208(b). All such counterclaims are permissive, not mandatory. See, e.g., Classic Automobiles, Inc. v. Oxford Resources, Corp., 204 A.D.2d 209, 612 N.Y.S.2d 32, 33 (1st Dept. 1994).
>
> Housing Court actions for non-payment of rent and possession of property . .  proceed by way of "special" or "summary" proceedings. . . . The summary process is a statutory device designed to achieve simple, expeditious and inexpensive resolution of disputes over the right to possession of real property. . .  **third party practice is severely circumscribed. While the Housing Court has power to "join any other person or city department as a party," it can only do so only "in order to effectuate proper housing maintenance standards and to promote the public interest**." NYCCCA § 110(d). Specifically with respect to summary proceedings, third party practice has generally been permitted only to add a governmental agency whose mission entails either

20

rent assistance or enforcement of housing maintenance standards.[citations omitted](emphasis added).

Id at 23-25.

Moreover, even if a consumer such as Mr. DiMatteo *could have* brought his FDCPA claim as a third party action in Housing Court (rather than as a separate federal action), the Second Circuit has explicitly held that a consumer in his position is under no obligation to do so. To wit, in Cousins v. Duane St. Assocs., 7 Fed. Appx. 85, 87 (2d Cir. 2001)(summary order), "[t]he underlying premise of [the consumer's] Complaint was that the Landlord-Defendants were engaged in a practice of bringing summary nonpayment eviction proceedings to evict rent regulated tenants such as himself."  The Second Circuit stated as follows:

> The Complaint appears also to allege FDCPA claims against the Attorney-Defendants based on their filing of the third petition. Even if these claims could have served as a defense to the third proceeding, *we do not understand New York preclusion law to require a defendant in a summary nonpayment proceeding brought by his landlord to initiate third-party practice against the landlord's attorneys in order to preserve claims under the FDCPA.* See N.Y. C.P.L.R. 1007 (governing permissive third-party practice).  For these reasons, the district court's dismissal of Cousins' FDCPA claims against the Attorney-Defendants must be vacated, and the case remanded to the district court.

Id. at 88 (emphasis added).  See also, 15 U.S.C. 1692k(d) ("Jurisdiction. An action to enforce any liability created by this subchapter may be *brought in any appropriate United States district court* without regard to the amount in controversy, *or in any other court of competent jurisdiction*. . . "(emphasis added); Section III(A)(1) and (2), supra (reviewing application of the FDCPA to state court pleadings and litigation conduct in landlord-tenant litigation and state court collection litigation, more generally.)

Finally, to the extent Defendants contention is based on the State Court Stipulation of Settlement constituting a waiver of Mr. DiMatteo's rights, Defendants argument is likewise meritless:  Defendants herein were not parties to that stipulation, nor were they named in it or

21

referred to in it, nor did the Stipulation contain any language that could fairly be construed as constituting a waiver of any of Mr. DiMatteo's rights with regard to any party or non-party to the State Court Action.  Exhibit 1.

**IV.**     **CONCLUSION**

For all of the reasons set forth above, the Defendants' motion to dismiss should be denied in its entirety.

Dated: March 25, 2014

Respectfully submitted,

*/s/Elizabeth Shollenberger*
Elizabeth Shollenberger, Esq.
Daniel A. Schlanger, Esq.
Schlanger & Schlanger, LLP
343 Manville Road
Pleasantville, NY 10570
T. 914.946.1981, ext. 103
F. 914.946.2930
elizabeth.shollenbeger@schlangerlegal.com

*ATTORNEYS FOR PLAINTIFF*