UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

EUGENE DiMATTEO,

                *Plaintiff,*

     *-against-*

SWEENEY, GALLO, REICH & BOLZ, LLP
and DAVID A. GALLO, ESQ.,

               *Defendants.*

------------------------------------------------------------X

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: September 9, 2014

No. 13 Civ. 8451 (PAC)

**MEMORANDUM & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

    Plaintiff Eugene DiMatteo is a statutory tenant in a rent-controlled apartment in New York City. His landlord refused to cash a year's worth of rent checks tendered, not by DiMatteo, but rather by a person who lives with DiMatteo, because doing so might establish a right to succeed to DiMatteo's rent-controlled tenancy. The landlord, represented by Defendants, commenced a summary eviction proceeding in New York City Housing Court for nonpayment of rent. That action promptly settled. Apparently, the settlement was only partially satisfactory to DiMatteo, and within a short time, he instituted this action, asserting that Defendants violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and New York Judiciary Law § 487. Defendants move to dismiss the Complaint. The motion is granted.

<b>BACKGROUND</b>

    In September 2012, the landlord, nonparty Tom Sullivan LLC, "refused to accept payments" unless they were made by DiMatteo, the statutory tenant. (*See* Compl. ¶¶ 23–25.) On September 6, 2013, Defendant Sweeney, Gallo, Reich & Bolz, LLP ("SGRB"), sent

1

DiMatteo a letter, demanding that he make back rent payments for September, 2012 to September, 2013. (*Id.* ¶¶ 25–27 & Ex. C ("Demand Letter").)  The Demand Letter began as follows:

> Despite this demand for payment, if any portion of this claim is disputed, you are to notify us within thirty (30) days after receipt of this notice, indicating the nature of the dispute, as to the amount due or any part thereof.  If we do not hear from you within said thirty (30) days, we will assume the debt to be valid as stated in the Notice.

(*Id.* Ex. C.)  It continued that SGRB "may be considered to be acting as a 'debt collector'" under the FDCPA and that "[t]his notice shall not prevent your landlord from proceeding with such other remedies as may be available to it, as a summary proceeding." (*Id.*)  The next page warned that unless full payment was made by September 19, 2013, "the Landlord will commence summary proceedings under the Statute to recover the possession" of the apartment. (*Id.*)

On October 18, 2013, SGRB commenced a summary proceeding in New York City Housing Court on behalf of the landlord, seeking (1) the eviction of DiMatteo and the nonstatutory tenant, (2) payment of the rent in arrears, and (3) "legal fees" of $750. (*Id.* Ex. D).  On November 1, 2013, DiMatteo's counsel wrote to Defendants that no debt was owed because the landlord "has simply failed to cash his rent checks" and that "there is no lease provision authorizing the collection of attorneys' fees." (Gallo Decl. Ex. 4.)[1]  The letter also asserted that SGRB's Demand Letter violated the FDCPA but suggested that "[t]his dispute can be resolved without Federal court litigation." (*Id.*)

Four days later, on November 5, the landlord–tenant dispute was settled by stipulation in the Housing Court. (Compl. ¶ 35 & Ex. E (the "Settlement").)  The Settlement provides that the

---

[1] The Court considers this letter upon this motion because the letter is relied upon in Paragraph 34 of the Complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

landlord "had refused to cash the checks, because the checks were signed by" the nonstatutory

tenant living with DiMatteo. (Settlement ¶ 2.)  It also states that the landlord "is now in

possession of a check for $6180.93, drawn on a joint account in the name of [DiMatteo and the

nonstatutory tenant], signed by [the nonstatutory tenant]." (*Id.*)  The amount tendered

"represents all rent due." (*Id.* ¶ 3.)  The Settlement further provides that the parties reserved their

rights with respect to any future dispute regarding the nonstatutory tenant's right to succeed

DiMatteo as a rent-controlled tenant in the apartment. (*Id.* ¶¶ 4–6.)[2]

Three weeks after the Settlement, on November 26, DiMatteo commenced this action

against SGRB and one of its attorneys, David A. Gallo, alleging FDCPA violations and a

pendent state-law claim.

## DISCUSSION

### I. Legal Standards

#### A. Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  That is, a

complaint must "nudge[] [the plaintiff's] claims across the line from conceivable to plausible."

*Twombly*, 550 U.S. at 570.  "Threadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  Nevertheless, the Court

must accept well-pleaded factual allegations as true, "drawing all reasonable inferences in the

---

[2] More specifically, the Stipulation provides that: (1) the landlord's acceptance of checks signed by the nonstatutory tenant "is without prejudice to [the landlord]'s rights to contest the occupancy/tenancy of [the nonstatutory tenant]"; (2) the landlord "'recognizes' only DiMatteo as the rent-controlled tenant of the subject apartment"; and (3) "[the nonstatutory tenant] reserves his right to seek succession rights to the subject apartment."

3

plaintiff's favor." *Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 637 F.3d 112, 115 (2d Cir. 2011). Upon a motion to dismiss, "[c]ourts may also properly consider 'matters of which judicial notice may be taken, or documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.'" *Halebian v. Berv*, 644 F.3d 122, 131 n. 7 (2d Cir. 2011) (quoting *Chambers*, 282 F.3d at 153).

### B. The Fair Debt Collection Practices Act

"The FDCPA was passed to protect consumers from deceptive or harassing actions taken by debt collectors." *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002). It prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. For example, a debt collector may not make a "false representation of . . . the character, amount, or legal status of any debt" or "threat[en] to take any action that cannot legally be taken." *Id.* § 1692e(2), (5). "To effectuate [the statute's] purpose, [courts] review claims of FDCPA violations under the so-called least-sophisticated-consumer standard . . . ." *Kropelnicki*, 290 F.3d at 127.

Nonetheless, "the FDCPA does not aid plaintiffs whose claims are based on 'bizarre or idiosyncratic interpretations of collection notices.'" *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010). Therefore, "some courts have held that 'even the least sophisticated consumer can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care.'" *Ellis*, 591 F.3d at 135. In addition, "[t]o satisfy the FDCPA, the alleged act must at a minimum involve a misrepresentation that is 'material.' That is, the statement must 'influence a consumer's decision or ability to pay or challenge a debt.'" *Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 508, 518 (S.D.N.Y. 2013) (citations omitted).

4

Furthermore, since "[t]he Act focuses on regulating interactions between 'debt collectors' and 'consumers,'" *Ellis*, 591 F.3d at 134, "[w]here an attorney is interposed as an intermediary between a debt collector and a consumer, [courts may] assume the attorney, rather than the FDCPA, will protect the consumer from a debt collector's fraudulent or harassing behavior." *Kropelnicki*, 290 F.3d at 128 (dicta); *see also Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x 89, 96 (2d Cir. 2012) (summary order) ("[T]he protective purposes of the FDCPA typically are not implicated 'when a debtor is instead protected by the court system and its officers.'").

## II. Analysis

The allegations in the Complaint and the language of the Settlement demonstrate that even the least sophisticated consumer would not have been confused about the nature of the landlord's claims for back rent.  DiMatteo was well aware that the landlord refused to accept rent checks not signed by him, and that that was the reason why SGRB's Demand Letter asserted that his rent payments were in arrears.  DiMatteo himself had signed a letter urging the landlord to accept a check for the full amount of back rent because the landlord had "not cashed any of the previous rent checks." (Compl. ¶ 26 & Ex. B.)  Indeed, the Settlement conceded that the amounts set forth in the Demand Letter represented "rent due." (*Id.* Ex. E. ¶ 3.)

Furthermore, the Demand Letter began with the "validation notice" prescribed by the FDCPA, "setting forth, among other things, the consumer's right to dispute the debt" within 30 days. *Ellis*, 591 F.3d at 131–32 (citing 15 U.S.C. § 1692g(a)). Absent a dispute notice from DiMatteo, SGRB was within its rights to "continue collection activities, including commencing litigation," even during that 30-day period, provided that such activities did not "overshadow[] or contradict[] the validation notice"—*i.e.*, by "mak[ing] the least sophisticated consumer uncertain

5

as to her rights." *Id.* at 135–37. Here, SGRB filed the lawsuit in Housing Court *after* the

expiration of the 30-day validation period. And while the Demand Letter demanded payment by

September 19, 2013, it also clarified that "[t]his notice shall not prevent your landlord from

proceeding with such other remedies as may be available to it, as a summary proceeding."

(Compl. Ex. C.) Therefore, DiMatteo's own pleadings render implausible any allegation that the

Demand Letter was deceptive or misleading.

    The allegation that the Housing Court lawsuit itself represents an independent FDCPA

violation is not well taken. DiMatteo, of course, was represented by counsel in that proceeding.

Indeed, his counsel negotiated a settlement of the summary eviction proceeding, during which

negotiations his counsel alleged the same FDCPA violations that DiMatteo asserts here. While

the Settlement itself does not mention the FDCPA, it is clear that both parties understood that the

landlord had been refusing to accept checks from the nonstatutory tenant out of concern that the

nonstatutory tenant might be able to succeed DiMatteo as the rent-controlled tenant. The

landlord's position was understandable and appropriate. *See, e.g.*, *Park Holding Co. v. Power*,

554 N.Y.S.2d 861, 863 (App. Div. 1st Dep't 1990) ("[A]n issue of fact is presented as to whether

the landlord's acceptance of rent from [the tenant of record's lifetime partner] over a four-year

period, without any effort to terminate the tenancy, constituted a waiver of the landlord's right to

object to [the parnter]'s continued occupancy of the apartment."); *80 Delancey, LLC v. Gee

Hong Lee*, 25 Misc. 3d 131(A) (N.Y. App. Term 2009) (same).

    The Court need not resolve any questions of local landlord–tenant law. It suffices to say

that DiMatteo was well aware of the reason for the landlord's refusal of the checks and the basis

for the summary proceeding. *Cf. Gabrielle v. Law Office of Martha Croog*, No. 10-CV-1798,

2012 WL 460264, at *3 (D. Conn. Feb. 9, 2012) ("Even if a statement is false in some technical

sense, it does not violate the statute unless it would mislead the unsophisticated consumer."),

*aff'd sub nom. Gabriele*, 503 F. App'x 89, 94 ("[N]ot every technically false representation by a

debt collector amounts to a violation of the FDCPA."). Aside from DiMatteo's own knowledge

of what was going on from September 2012 to September 2013, he was represented by counsel

during the Housing Court proceeding. In these circumstances, it is surely not plausible that there

was any consumer deception under the FDCPA. *See Kropelnicki*, 290 F.3d at 128; *Gabriele*, 503

F. App'x at 96.[3]  Therefore, the FDCPA claim is dismissed.

## III. Pendent Claim Under New York Judiciary Law

DiMatteo's remaining claim under New York Judiciary Law § 487[4] is brought on the

basis of supplemental jurisdiction. The Court, however, "decline[s] to exercise supplemental

jurisdiction" over this state-law claim because it "has dismissed all claims over which it has

original jurisdiction." 28 U.S.C. § 1367(c); *see Oneida Indian Nation of N.Y. v. Madison Cnty.*,

665 F.3d 408, 437 (2d Cir. 2011) ("[I]f a plaintiff's federal claims are dismissed before trial, 'the

state law claims should be dismissed as well.'").

---

[3] For the same reasons, there is no plausible FDCPA claim on the grounds that Defendants misrepresented that there was a written lease and that "legal fees" were due. Whether the lease was written is immaterial, *see Okyere*, 961 F. Supp. 2d at 518, and the claim for legal fees was not made in the Demand Letter, but rather in the subsequent Housing Court proceeding where DiMatteo was represented by counsel.

[4] This statute provides, in pertinent part: "An attorney or counselor who . . . deceive[s] the court or any party . . . forfeits to the party injured treble damages, to be recovered in a civil action."

## **CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss the Complaint is GRANTED.

Plaintiff's FDCPA claim is dismissed under Federal Rule of Civil Procedure 12(b)(6), and the

Court declines to exercise supplemental jurisdiction over the New York Judiciary Law claim.

The Clerk of Court is directed to terminate the pending motion and to close this case.

Dated:  New York, New York
       September _9_, 2014

SO ORDERED

PAUL A. CROTTY
United States District Judge

8